IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SHELLI B. WICKLUND,[1]

        Plaintiff,

v.

MICHAEL J. ASTRUE,[2]

        Defendant.

Civil No. 06-6210-AS

FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

    Plaintiff Shelli B. Wicklund seeks judicial review of the Social Security Commissioner's

---

[1] On April 13, 2007, Defendant filed notice of "Suggestion of Death on the Record," indicating that Wicklund died January 1, 2007 (Docket # 17). Plaintiff's counsel will attempt to reach Wicklund's heirs, Chole Miller and E.M., a minor, regarding a future motion for substitution of parties.

[2] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. section 405(g).

1 - OPINION AND ORDER

final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision should be affirmed.

## PROCEDURAL BACKGROUND

Born in 1961, Wicklund completed high school. Tr. 62, 73.[3] Wicklund endorsed completing four or more years of college in her submissions to the record, but testified at her hearing that she did not receive a degree. Tr. 73, 451. Between 1997 and 2001 Wicklund worked as a graphic designer and store clerk. Tr. 68, 86, 100.

Wicklund alleges disability since October 11, 2002, due to "depression, mania, panic, anxiety, borderline personality disorder, suicidal feelings, hypothyroidism, migraine headaches." Tr. 67. Wicklund's applications were denied initially and upon reconsideration. Tr. 40-42, 45-49.[4] After Wicklund's October 2005 hearing before an Administrative Law Judge ("ALJ"), the ALJ found Wicklund could perform significant work in the national economy and, therefore, was not disabled. Tr. 21-22. The Appeals Council denied review, making the ALJ's decision final. Tr. 6-8. Wicklund filed a petition in this court for review of the ALJ's finding.

## MEDICAL BACKGROUND

The medical record shows that Wicklund was first hospitalized at Sacred Heart Medical Center on March 2, 2000, following self-inflicted knife wounds. Tr. 153. Emergency physicians

---

[3] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer October 16, 2006 (Docket #11).

[4] The record indicates that Wicklund's SSI application was denied, but the relevant pages do not appear in the record before this court. Tr. 5.

assessed an adjustment disorder.  Id.  Wicklund was subsequently transported to Lane County Psychiatric Hospital ("LCPH") for involuntary admission because she could not contract for her own safety.  Tr. 154-55.  Wicklund was discharged from LCPH eleven days later with diagnoses of borderline personality disorder, major depression in remission, hypothyroidism, and self-inflicted lacerations.  Tr. 158.

Wicklund was again admitted to Sacred Heart Medical Center on May 16, 2000, following "increased suicidality associated with her major depressive disorder."  Tr. 170.  The record states, "today she took her hands and held a knife to her chest and tried to fall forward on the knife, which fortunately slid upward on her chest, leaving only [sic] superficial laceration about eight inches long."  Tr. 170.  She was discharged one day later with diagnoses of major depression, recurrent, and a history of suicide attempts beginning in February 2000.  Tr. 171.

Wicklund was subsequently readmitted to LCPH.  LCPH notes dated May 25, 2000 indicate diagnoses of major depression, recurrent, possible dysthymia, and a personality disorder. Tr. 178.  The intake physician noted that, "It seems that the primary difficulty at this point has to do with her personality disorder."  Tr. 181.  The associated clinical history additionally states:

> [T]wo weeks ago she sat in her garage in her car with it running for several hours.  This produced no loss of consciousness but a headache.  Then, in the last several days she held a knife to her chest and tried to fall forward on the knife.

Tr. 179.

In September 2002 Wicklund had an elective abominoplasty ("tummy tuck") and lipoplasty ("chin tuck").  Tr. 202-06.

3 - FINDINGS AND RECOMMENDATION

In January 2004 Wicklund was hospitalized in Michigan following another suicide attempt. Tr. 211-15. Wicklund overdosed on alcohol, Effexor, and Tylenol 3. Tr. 212.

In August 2004 Wicklund again attempted suicide through an overdose of Tylenol 3 and tricyclic antidepressants. Tr. 231-36. She was hospitalized at Sacred Heart Medical Center and discharged after two days. The diagnostic assessment included a "history of recurrent depression which is possibly bipolar," questionable "elements of an adjustment disorder," a history that "strongly suggests an anxiety disorder," and "marijuana intoxication abuse and probably dependency." Tr. 236. The attending physician commented, "I think the primary issue here is probably a borderline personality disorder which may also have some histrionic and narcissistic features as well." Id.

Between January 1999 and May 2005 Wicklund received intermittent outpatient mental health treatment from psychiatric mental health nurse practitioners and social workers at Lane County Mental Health ("LCMH"). Diagnoses included major depression, bipolar disorder, and borderline personality disorder "by history." Tr. 336, 339, 342, 347, 351, 361, 366, 368, 430, 433, 436, 438. LCMH records are inconsistent regarding Wicklund's borderline personality disorder diagnosis, mostly noting that the diagnosis occurs "by history" only. Id. In July 2000 a LCMH psychiatric nurse practitioner initiated a lengthy "discussion" regarding Wicklund's potential borderline personality diagnosis, concluding that Wicklund did not meet criteria for this diagnosis. Tr. 396-99. Defendant indicates that Wicklund died January 1, 2007.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920,

4 - FINDINGS AND RECOMMENDATION

Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Wicklund challenges the ALJ's evaluation of the evidence and his conclusions at step five.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. Id.

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e), 416.920(e), Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 416.920(f).

5 - FINDINGS AND RECOMMENDATION

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

## THE ALJ'S FINDINGS

The ALJ found Wicklund's allegations regarding her inability to work "not credible." Tr. 21. He found her bipolar disorder, borderline personality disorder, and substance abuse disorder "severe" at step two in the sequential proceedings. Tr. 15, 21. At step three, the ALJ found that Wicklund's impairments in combination did not meet or equal a "listed" disorder. Tr. 21. The ALJ evaluated Wicklund's RFC:

> The claimant factoring in the effects of substance abuse has the following residual functional capacity to work. She has no medically determinable physical impairments and no limitations on her exertional capacities, but her bipolar, personality, and substance abuse disorders limit her to understanding, remembering and carrying out simple short routine tasks and instructions; and to having no interaction with the general public.

Id. The ALJ subsequently found that Wicklund could not perform her past relevant work, but that she could perform significant work in the national economy. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r for Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

6 - FINDINGS AND RECOMMENDATION

Cir. 2004). This court weighs "both the evidence that supports and [that which] detracts from the ALJ's conclusion." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court "may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Magallanes, 881 F.2d at 750; see also Batson, 359 F.3d at 1193.

## DISCUSSION

Wicklund contends the Commissioner failed to meet his burden at step five in the sequential proceedings because the ALJ failed to accurately assess her credibility and failed to properly assess the medical evidence. Specifically, she claims that "the hypothetical to the VE did not include the limitations that the claimant alleges" and "the ALJ erred in failing to give proper consideration to the medical evidence." Pl. Opening Br. 16, 19. The first submission challenges the ALJ's credibility finding, the second, his review of the record.

**I.     Credibility**

Wicklund's challenge to the ALJ's credibility finding asserts the ALJ erroneously considered her malingering behavior, her work activity, her compliance with treatment protocol, and the circumstances surrounding her onset date. Pl. Opening Br. 17-18. Each submission is addressed in turn.

  *a.     Credibility Analysis*

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Once a claimant shows an underlying impairment, the

7 - FINDINGS AND RECOMMENDATION

ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence."  <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 883 (9th Cir. 2006).  In making credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, including any failure to seek treatment, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996).  Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  <u>Id.</u>

### b.     *Malingering*

Wicklund states that "There is no evidence of malingering in this case."  Pl. Opening Br. 16.  She furthermore asserts, via a footnote, that,

> The ALJ states that a psychiatrist "was not able to rule out that the claimant has been enhancing or even malinger [sic] as to her presented depressive symptoms. (Tr. 16)  He is referring to the evaluation of Dr. Sampley who stated that a full diagnosis "could require a substantial relationship with the patient to clarify." (Tr. 236)  He stated that malingering had to be considered.  Dr. Sampley did not diagnose malingering, but simply stated that it was a consideration.  However, the providers who worked with plaintiff for a long period never diagnosed malingering, and Dr. Dragovich, the psychologist at hearing who reviewed the whole record, did not find a diagnosis of malingering in the record.

Pl. Opening Br. 16, n.2.

The ALJ based his malingering inference upon statements made by an inpatient psychiatrist, Dr. Sampley, who supervised Wicklund during her August 2004 psychiatric admission following a suicide attempt.  Dr. Sampley's chart notes include a diagnostic

8 - FINDINGS AND RECOMMENDATION

assessment:

> She has a history of recurrent depression which possibly is a bipolar type II but difficult to say with a single interview. This could represent just a chronic dysthymia as well. It could be cyclothymia, could be bipolar type II or recurrent depression. Also must consider aspects of symptom enhancement or even malingering, seeking disability, and a full diagnosis of this should require a sustained relationship with the patient to clarify.

Tr. 236. The ALJ's inference that Dr. Sampley suggested malingering is based upon the record.

The ALJ also cited the medical expert, Dr. Dragovich, at Wicklund's hearing:

> Dr. Dragovich agreed with an evaluating psychiatrist that the claimant's history was most consistent with a personality disorder. That psychiatrist, in fact, was not able to rule out that the claimant has been enhancing or even malingering as to her potential depressive symptoms. (Exhibit 8F, pages 13-14).

Tr. 16. The ALJ's statement that "Dr. Dragovich agreed with an evaluating psychiatrist that the claimant's history was most consistent with a personality disorder" does not establish that the ALJ relied upon any malingering opinion proffered by Dr. Dragovich. Tr. 16. Dr. Dragovich's testimony does not reference malingering. Tr. 488-93. Wicklund's submission that the ALJ erroneously relied upon Dr. Dragovich's malingering opinion is not based upon the record.

Wicklund concedes that the ALJ did not make an actual finding of malingering. Pl. Opening Br. 16. Such a finding would preclude further credibility analysis. Smolen, 80 F.3d at 1280. Here, the ALJ noted a physician's malingering suggestion as one of various credibility factors. If the record presents two equally plausible readings, this court must uphold the ALJ's inferences. Batson, 359 F.3d at 1193. Wicklund's submission that "there is no evidence of malingering in this case" is not based upon the record. Pl. Opening Br. 16. The ALJ's reference to a potential malingering inference as one aspect of his credibility decision is supported by the

record and should be sustained.

### c. *Work Activity and Activities of Daily Living*

Wicklund submits that her e-bay sales did not constitute substantial gainful activity ("SGA"). Pl. Opening Br. 17. Contrary to Wicklund's submission, the ALJ did not find that Wicklund's e-bay activity constituted SGA. Tr. 14, 21. This court cannot review Wicklund's earnings she did not report. For this reason, this court neither sustains nor rejects the ALJ's inference that Wicklund may not have reported earnings from her sales activity.

However, part time work, or even volunteer activity, may show that a claimant is capable of performing SGA. See Katz v. Secretary of Health and Human Services, 972 F.2d 290, 293 (9th Cir. 1992). The ALJ may indicate discrepancies between reported daily activities and alleged impairments. Smolen, 80 F.3d at 1284. A claimant's daily activities may suggest the claimant retains an ability to perform work activities. Orteza, 50 F.3d at 750. Limited work activity may also show a claimant is capable of doing more substantial work. 20 C.F.R. §§ 404.1571, 416.971. The ALJ's reference to Wicklund's e-bay activity in his credibility finding should be sustained.

Wicklund also asserts that she alleged onset in August 2001 "because in that month she was fired from her job for poor work performance, after she had reported illegal activity by her managers." Pl. Opening Br. 18 citing tr. 378. The indicated record excerpt, submitted by Wicklund's mental health nurse practitioner, Carole Bekkenhuis-Johnson, in August 2001, reads:

> Shelli presents herself today stating that she had difficulty on her job. The managers there were doing something illegal. Shelli went to the State to try to clear it up and she was fired from her

10 - FINDINGS AND RECOMMENDATION

>    job, saying that her work performance was poor.  However, she is
>    described throughout the year to me as being an Employee of the
>    Month and having received many other accolades.  She has
>    retained a lawyer and is filing a lawsuit against her former
>    employer.
>
> Tr. 378.

This statement does not establish that Wicklund was fired for reasons relating to her impairments.  To the contrary, Bekkenhuis-Johnson's statement suggests Wicklund's work performance was at least adequate.  The ALJ's finding that Wicklund's August 2001 onset date did not correspond to any "significant mental health event or decline" is based upon the record and should be sustained.  Tr. 17.

Finally, the ALJ also cited Wicklund's activities of daily living, which Wicklund does not challenge.  Tr. 18.  Such citation is appropriate and may indicate discrepancy between a claimant's purported disability and activity.  Smolen, 80 F.3d at 1284.  This finding should be sustained.

### d.     *Non-Compliance With Treatment*

#### i.     *Inability to Afford Treatment*

Wicklund submits that "for the most part, plaintiff has taken her medications as prescribed.  When she did stop taking medication on occasion, she has done so because of financial problems."  Pl. Opening Br. 19.  Her indicated citations show termination of treatment at LCMH in March 2003 and references regarding obtaining financial assistance for prescription medication; the relevant transcript citations do not show that Wicklund ceased taking medication.  Tr. 198, 290, 357, 374.

The ALJ discussed Wicklund's ability to pay for treatment:

11 - FINDINGS AND RECOMMENDATION

> The claimant alleged the inability to afford medications because of a lack of money and health insurance coverage in October 2001 and, for this same alleged reason, she allowed mental health counseling to lapse from March 2003 until August 2004 (Exhibit 13F, pages 23-25 and 5F, page 2). Moreover, the claimant met the expenses of anesthesia and surgical liposuction for an elective aesthetic "tummy tuck" in September 2002.

Tr. 18.

LCMH records state that in March 2003 Wicklund was discharged from their treatment program and "due to recent program cuts the client will be transferred to her PCP [primary care provider]." Tr. 355. The nature of the "cuts" is not clear from the record. Wicklund resumed LCMH treatment in September 2004. Tr. 357.

The ALJ also cited Wicklund's elective abdominoplasty ("tummy tuck") and lipoplasty ("chin tuck") in September 2002. Tr. 202-06. The record shows that Wicklund requested these procedures for "aesthetic improvement." Tr. 202. The record does not endorse the medical necessity Wicklund later indicated at her hearing. Tr. 480. Wicklund also testified that she paid for the procedure with overtime wages paid by her previous employer. Id. This court affirms the ALJ's reasoning that this surgery contradicts Wicklund's statement that she could not afford treatment.

While a claimant cannot be faulted for failing to seek treatment she cannot afford, an ALJ may consider a claimant's failure to seek treatment. Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995), Smolen, 80 F.3d at 1284, Bunnell v. Sullivan, 912 F.2d 341, 346 (9th Cir. 1990) (en banc). Here, the ALJ's finding that Wicklund could afford treatment during the period in question is adequately based upon the record.

/ / /

12 - FINDINGS AND RECOMMENDATION

### ii.     *Drug Seeking Behavior*

Wicklund submits that "there is very little evidence of drug use in this case."  Pl. Opening Br. 19.  While the record does not support the ALJ's assertion that Wicklund obtained excessive prescription medications, the record supports his finding that Wicklund had positive drug screens for opiates, produced by Tylenol 3 overdose, and "THC" (marijuana) during her hospitalizations in 2004.  Tr. 215, 232, 236.  In the context of Wicklund's suicidal gesture through an overdose, the ALJ's inference that Wicklund abused narcotic drugs should not be sustained.  However, Wiklund's submission regarding "very little evidence of drug use" is not based upon the record.  The ALJ's inference that Wicklund used marijuana is supported by the record and should be sustained.

### e.     **Credibility Conclusion**

The ALJ's reference to instances in the record regarding malingering and marijauna use are based upon the record and, while admittedly weak, should be sustained.  The ALJ's assessment of Wicklund's activities of daily living is also sustained.  The ALJ appropriately cited these activities to illustrate inconsistencies between Wicklund's capabilities and her alleged disability.  The ALJ's notice that Wicklund abused prescription medications is not based upon the record and does not support his universal negative credibility assessment.

This court may sustain an ALJ's credibility conclusion while declining to sustain isolated aspects of that conclusion.  Wicklund fails to identify any errors by the ALJ which undermine his credibility analysis based upon her activities of daily living.  This court finds that the ALJ's general credibility conclusion is based upon the record and should be sustained.

/ / /

## II.     Medical Source Statements

Wicklund does not challenge the ALJ's review of her treating physician's records, her treatment at LCMH between January 1999 and May 2005, or her numerous emergency room visits.  Instead, Wicklund broadly submits that "the ALJ erred in failing to give proper consideration to the medical evidence."  Pl. Opening Br. 19.  Her argument asserts that 1) the ALJ "stated that Dr. Dragovitch [sic] did not accept any aspect of the opinions of plaintiff's providers suggesting that she is not able to mentally sustain competitive work, " 2) the record shows, "as Dr. Dragovitch [sic] herself stated, that plaintiff's symptoms have waxed and waned," and 3) "The question is whether plaintiff could sustain work when she has periods of intense emotional turmoil . . . as the VE testified if an employee misses more than a day or so a  month on a regular basis, for an unskilled job, there would be a problem retaining that job."  Pl. Opening Br. 19-20.

Wicklund points to no legal authority for these propositions other than SSR 96-7p.  Pl. Opening Br. 20.  Her selected portion of SSR 96-79, proffered without internal citation, states, "symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms."  Pl. Opening Br. 20.

This language arises at SSR 96-7p at *5 (<u>available</u> at 1996 WL 374186).  The passage immediately continues, "Therefore, the adjudicator will need to review the case record to determine whether there are any explanations for any variations in the individual's statements about symptoms and their effects."  SSR 96-7p at *5.

/ / /

### i. *Provider Work Opinions*

Wicklund does not point to a particular opinion rendered by a treating or examining physician or other medical source suggesting that she is unable to sustain employment. Pl. Opening Br. 19. Furthermore, Wicklund's own review of the record does not point to any suggestion by a provider that she is unable to work. Pl. Opening Br. 2-13.

This court's review of the medical record shows that no physician, psychiatrist, psychologist, nurse practitioner, or social worker suggested Wicklund could not work due to her impairments. The record reflects Wicklund's employment termination and subsequent difficulty finding employment, but no provider suggests Wicklund's mental impairments render her unable to work. Wicklund's submission that medical expert Dr. Dragovich's opinion contradicts reports that Wicklund is unable to work is not based upon the record and should be rejected.

### ii. *Waxing and Waning Symptoms*

Wicklund's second submission asserts that her symptoms waxed and waned throughout the period in question. Pl. Opening Br. 19. The medical record shows that Wicklund experienced episodes of psychiatric crisis and remission throughout the period in question. Prior to evaluating particular elements of Wicklund's history, Dr. Dragovich noted that, "this is a waxing and waning kind of situation." Tr. 490.

Wicklund would apparently argue, without citation to relevant authority, that waxing and waning symptoms do not preclude a disability finding. Symptom-free periods may indeed be found consistent with disability. Reddick, 157 F.3d at 724. However, Wicklund must still show that periods of crisis prohibited her from working. As stated above, no treating or examining physician suggested her bipolar or borderline personality diagnoses precluded work activity.

15 - FINDINGS AND RECOMMENDATION

Dr. Dragovich's review of the record directly affirmed the "waxing and waning" nature of Wicklund's symptoms. Tr. 490. A reviewing physician's opinion cannot constitute substantial evidence justifying rejection of a treating or examining physician's opinion. Lester, 81 F.3d at 831. However, Wicklund is unable to point to any provider of record who suggested her waxing and waning symptoms precluded work activity. The ALJ's reliance upon Dr. Dragovich's review of the record should be sustained.

### III.    Vocational Expert Testimony

Wicklund submits that the arguments above establish that the ALJ erroneously excluded relevant limitations from his questions to the vocational expert.

The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. Bayliss, 427 F.3d at 1217, Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001). The ALJ's questions to the VE included restrictions identified in Wicklund's appropriately supported RFC assessment. Tr. 494.

Because the ALJ did not find further limitations proffered by Wicklund supported by the medical record, it was not error for the ALJ to exclude these limitations from his hypothetical question. Osenbrock, 240 F.3d at 1164-5, Magallanes, 881 F.2d at 757.

### RECOMMENDATION

The Commissioner's decision that Wicklund did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED and the case should be dismissed.

**SCHEDULING ORDER**

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due May 14, 2007. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within fourteen days after service of a copy of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

IT IS SO ORDERED.

Dated this 27th day of April, 2007.

          /s/Donald C. Ashmanskas  
          DONALD C. ASHMANSKAS  
          United States Magistrate Judge